CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY ET AL. V. JOHN H. HARLEY.

FILED SEPTEMBER 20, 1905. No. 13,909.

1. **Evidence** examined, and *held* to present a state of facts from which different minds might reasonably draw different inferences.

2. **Proximate Cause of Injury**: QUESTION FOR JURY. Where the proximate cause of an injury depends upon a state of facts from which different minds might reasonably draw different inferences, it is a proper question for the consideration of a jury. *Lincoln Traction Co. v. Heller*, 72 Neb. 127.

ERROR to the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*J. W. Deweese* and *Frank E. Bishop*, for plaintiffs in error.

*A. W. Field, contra.*

JACKSON, C.

This is a proceeding in error to reverse a judgment of the district court for Lancaster county. The defendant in error, hereafter styled the plaintiff, sued the plaintiffs in

error, hereafter styled the defendants, on account of a personal injury which he claims he sustained by reason of certain negligent acts of the defendants; the allegations of his petition material to the inquiry being: "On or about the 27th day of August, 1902, the said defendant railway company and the said defendant John Kreps, its foreman, negligently and carelessly placed the said handcar, with shovels and tools and the coats and dinner pails of the said workmen loaded thereon, in the said road near the track, and on the south side thereof, thereby negligently and wrongfully obstructing the road at said crossing, and so placing the same that it was impossible for any one desiring to use said crossing to pass over it. The workmen of the said defendant company, under the direction of the said Kreps, left said handcar so standing in the road and, at the time of the injuries herein complained of, had proceeded eastward along the railroad track about 300 feet, where they were at work. In the forenoon of said 27th day of August, 1902, the plaintiff John H. Harley, with one Frank Davey, was traveling along the public highway from Malcolm, and attempted to cross the railroad track at the crossing above described. The rails of said track at the point of said crossing were about five feet higher than the ground where said handcar had been left, and about five feet higher than the roadway along the north side of said track where the plaintiff and said Davey were driving. Upon reaching the right of way, at a point about 20 feet north of the defendant's track, said Davey, who was driving the horse, noticed an obstruction in the roadway on the south side of the track, and, placing the horse in charge of the plaintiff, left the vehicle and went forward to investigate. About this time the defendant Kreps, with the workmen, came to the crossing, and finding it impossible for the team to pass because of the obstruction by the handcar, on his volition and without request of the plaintiff or of said Davey, proceeded, with the assistance of said workmen, to remove said handcar from the roadway and place the same on the track. Plaintiff alleges that said

Kreps and said workmen moved the handcar along the roadway and upon said track in a careless, negligent and wrongful manner, so that the horse in charge of the plaintiff became frightened and unmanageable, because of the moving of said handcar along the roadway and upon the tracks, and ran eastward along the right of way of the defendant company, and at a point about 140 feet east of said crossing overturned the vehicle, throwing the plaintiff out, breaking his leg and rendering him unconscious. Plaintiff alleges that the horse in his charge at said time was of gentle disposition and safe for driving purposes, was accustomed to be driven near railroads, and was not frightened by the operation of cars along and upon railroad tracks; but that, because of the unusual sight of the handcar left standing in the road, and because of the negligent manner in which the same was moved along the road, and because of the unusual noise caused by said moving and the rattling of the tools, utensils and pails on said handcar, said horse became frightened and ran away." The defendants filed separate answers, in substance denying the allegations of the petition, and alleging that the injury received by the plaintiff was by reason of the running away of the horse, and that it was due to the carelessness and negligence of the plaintiff, and without fault or negligence on the part of the defendants. Plaintiff's reply was a general denial. There was a trial to the court and jury, resulting in a finding and judgment for the plaintiff. The defendants prosecute error to this court.

Many assignments of error are suggested in the petition, but, in the brief of the defendants and at the submission of the case in this court, counsel have suggested that they prefer to submit the case on the merits of the question of liability, rather than upon any technical error that would cause a reversal and a new trial, and that the facts upon which they rely for a disposition of the case, finally and without a new trial, are the facts that are admitted and sworn to by the plaintiff himself. We have examined the bill of exceptions and find competent evidence tending to

establish the following facts: The plaintiff is a resident of the city of Lincoln, where he is employed as secretary of a life insurance company. The company have agents at Malcolm, this state, and on the 27th day of August, 1902, the plaintiff was at that point for the purpose of assisting the company's agents in closing up some business they there had in view. One of the agents was a Mr. Davey, at whose home the plaintiff was a guest. Davey owned a farm about one mile distant from the town of Malcolm, of which a small tract was cut off from the balance of the farm by a creek, and the tract so cut off was accessible only by a private crossing over the right of way of the defendant company. The company's right of way was 50 feet wide on each side of the center of its track. At the point where the private crossing was located there was a fill of some four or five feet for the purpose of the company's roadbed, with borrow ditches on either side, and for the purpose of the crossing the company had built culverts over the borrow ditches, and Davey had built a grade from the culverts to the top of the fill. That portion of the driveway over the crossing that was used for travel was about ten feet wide, and on each side sunflowers had grown up as high or higher than a buggy top. The crossing opened into the public highway on one side and Davey's field on the other. The plaintiff was invited to accompany Davey's son to that portion of his farm reached by means of this private crossing, and hold the horse while he, Davey, procured some potatoes. The conveyance used on the occasion was a top buggy drawn by a single horse, known to be gentle and accustomed to be driven in that locality. He entered the buggy and accompanied Davey. They drove along the public highway, parallel with the defendant company's right of way, until the private crossing was reached. Here they started across, when, about half way between the railroad and the public highway, they discovered a handcar on the other side of the railroad track. Davey left the carriage in charge of the plaintiff and went across the track to see whether the handcar would interfere with

their crossing over the railroad. When Davey reached the car he informed the plaintiff that it would be necessary to remove the car from the crossing before they could pass over. The section foreman and crew of the defendant company in charge of the car were engaged in some repairs along the track at some distance away, and observing the presence of Davey and the plaintiff at the crossing, left their work and approached the crossing with the view of removing the car. On the handcar was clothing of the section crew, together with their dinner buckets. As the car was moved forward onto the track the dinner buckets rattled, and the horse, then being held by the plaintiff himself, who was alone in the carriage, being frightened, started to back up, the buggy was cramped, and the plaintiff, fearful of being overturned, undertook to control the horse and keep its head toward the car; but the horse became unmanageable and started to run down the defendant company's right of way. Plaintiff attempted to rein it back to the public highway. In doing so the buggy was overturned, the plaintiff was thrown to the ground and sustained a serious injury. The plaintiff had never before visited the place where the injury was received, and was therefore entirely unfamiliar with the crossing and surroundings. It was the custom of the section crew of the defendant company to leave the handcar where it was on this occasion, when at work in that vicinity. The car was on the wagon track and was so situated as to obstruct travel.

It is contended by the defendants that the leaving of the handcar at this crossing was not the proximate cause of the injury, and that, even though it may be held to have been an act of negligence on the part of the railroad company to have left its car on this crossing, still the plaintiff cannot recover, for the reason that the plaintiff himself was negligent in not permitting the horse to turn away from the object at which it was affrighted, and that the injury which he sustained was the direct result of his own negligent course in undertaking to keep the horse with its

face toward such object, and that he could readily have avoided the danger by turning the horse back toward the public highway. The question does not arise out of the ordinary use of a railroad track at a crossing, such as the operation of trains and handcars, or of the temporary obstruction to travel growing out of such use, but it involves the right of a railroad company, in the first instance, to remove a handcar from its track and place it upon a crossing in such a way as to obstruct travel, as well as the course subsequently pursued by the plaintiff when he found the highway so obstructed. There is no distinction in principle between a public and private crossing, in so far as the questions involved in this case are concerned; and, unless the plaintiff's own negligence was the proximate cause of his injury, then the case ought, to some extent, to be determined by the right of the railroad company to place its handcar upon the crossing as it did in this case.

In *Vars v. Grand Trunk R. Co.*, 23 U. C. C. P. 143, it appears that employees of the defendant removed a handcar from the track onto the public highway and went away and left it. "The plaintiff drove past in his carriage, and his horse, shying at the car, ran away, threw the plaintiff out and severely injured him. *Held*, that there was evidence of negligence to go to the jury, in thus placing the car on the highway, for which defendants were responsible; and a verdict for the plaintiff was upheld." In that case it was said by the court: "It was a matter entirely for the jury to say whether the vehicle in question was one calculated to cause the injury, and whether the place in which it was left was, or was not, a fit and proper place for it, so as to render the defendants guilty of negligence in so placing it."

In *Sherman S. & S. R. Co. v. Bridges*, 16 Tex. Civ. App. 64, 40 S. W. 536, the facts were as follows: Plaintiff's wife aproached defendant's railroad crossing, driving a horse which she had driven for several years and which had been found to be gentle. Defendant's employees had

left a handcar loaded with tools in such a position as to obstruct the highway, and the horse became frightened at the obstruction, and, after the employees had moved the handcar off the crossing, the woman urged the horse across the tracks, and it then ran away and she was killed. *Held,* that she was not guilty of contributory negligence, and that obstructing a highway, by allowing a handcar filled with tools and surrounded by employees dressed in white and blue garments to remain thereon, is such negligence as will render defendant liable for the death of one whose horse was frightened at the obstruction. In that case the crossing was a private crossing.

In *Atchison, T. & S. F. R. Co. v. Morrow,* 4 Kan. App. 199, 45 Pac. 956, it was said: "Where section-hands, in repairing a railroad track, place a handcar, with tools, buckets and coats thereon, by the side of the track, and within the margin of a highway, near the traveled road, in such a position as naturally or manifestly to be calculated from its appearance and situation to frighten horses of ordinary gentleness and broken to travel along the same, and a traveler on the highway, riding a horse of ordinary gentleness and broken to travel along the road, and exercising ordinary care and prudence, attempts to cross the railroad track, and in passing said handcar his horse is so frightened that he becomes unmanageable, and in his fright throws the rider to the ground and thereby injures him, it would be such negligence on the part of the employees of the railroad company as would render the company liable for damages sustained thereby."

And in *Ohio & M. R. Co. v. Trowbridge,* 126 Ind. 391, it is found: Where a woman was thrown and injured by her horse taking fright at a handcar, which two minutes before, and while she was approaching in full view of the section men, had been left by them standing ten feet from the center of the highway, the evidence of negligence proximately causing the injury is sufficient to sustain a verdict against the company.

In the light of these authorities, and taking into con-

sideration the ordinary and rightful use of crossings over railroads and the obligations of railroad companies with reference thereto, we conclude that the jury were justified in finding that the placing of the defendant company's car on the highway in such a manner as to obstruct travel was an act of negligence. It certainly was not such ordinary use of the crossing as was contemplated in the discussion of *Chicago, B. & Q. R. Co. v. Roberts,* 3 Neb. (Unof.) 425, cited by defendants.

The disposition of the case, then, must turn upon the question of whether or not the course pursued by the plaintiff was so negligent in character as to justify the court in determining from the evidence produced in his own behalf that he was not entitled to recover. Counsel for the defendants have presented a very able and exhaustive argument in support of the defendants' contention that it was. It is based, however, upon an assumption of fact with reference to which the jury evidently found against the defendant company. It is true that this assumption of fact is supported by the testimony of the defendants' witnesses, and is, in effect, that, when the plaintiff and Davey discovered the handcar on the crossing, they had just started to turn from the public highway onto the roadway leading over the crossing, and that, when the attempt was made to remove the handcar and the horse became frightened, the horse was so situated and might readily have been turned down the public highway and thus avoided all danger. With reference to the fact, however, about the location of the horse and conveyance at the time the horse was frightened, there is a sharp conflict in the evidence, both the plaintiff and Davey having testified that, before they discovered the car and stopped the horse, they had covered about half the distance between the public highway and the railroad track, and had proceeded to the culvert over the borrow ditch on that side of the railroad track from which they were approaching the car. It is evident, as we have already intimated, that the jury found the fact to be as testified to by the

plaintiff and the witness Davey. Furthermore, we are asked to determine this controversy upon the fact as admitted and testified to by the plaintiff. Here then is the situation. The plaintiff is alone in the buggy on the driveway, the open part of which is some ten feet in width. He is surrounded by sunflowers on either side as high or higher than the buggy top. The horse becomes frightened from the appearance of the handcar with clothing thereon, and the noise of the dinner buckets as the car is being pushed forward upon the railroad track some 25 feet away. The horse in its fright starts to back. The buggy was cramped and the plaintiff was fearful of being overturned. What should he have done under the circumstances? There is no time for mature deliberation. He attempted to control the horse and keep him with his face toward the object at which he was frightened. It is evident that different minds might draw different conclusions as to whether this act of the plaintiff was a negligent one, and the rule is well settled that, where the proximate cause of an injury depends upon a state of facts from which different minds might reasonably draw different inferences, the question is one for a jury, and the finding of a jury under such circumstances should not be disturbed.

We recommend that the judgment of the district court be affirmed.

DUFFIE, C., concurs. ALBERT, C., not sitting.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.